The bill states that Milton Moore of the county of Union, died intestate in the year 1847, leaving his widow, Jane Moore, him surviving; that the said intestate was possessed at his death of two slaves, Pena and her child Manda, which are the subject of this controversy; that these slaves had been originally the property of Jane Moore and her two sisters, one of whom, Catharine, had intermarried with the plaintiff James Moore, and the other, Elizabeth, was at that time an infant under twenty-one years of age, and were held, with a number *Page 488 
of other slaves, by the three sisters, as tenants in common under the will of their grandfather, Joshua Gorden, who died domiciled in the State of South Carolina, in which State the will was admitted to probate. The plaintiff James Moore took administration on the estate of Milton Moore, but never having seen the will, or a copy of it, and having been informed, and believing, that by the will of the said Joshua Gorden, the interest of Jane Moore was limited to her sole and separate use, to the exclusion of her husband, the said Milton, he and his wife joined in a petition with the said Jane and Elizabeth, in the County Court of Union, representing themselves as joint owners of the said slaves, and praying a partition thereof among the three. Under this proceeding, commissioners were appointed to make the partition according to the prayer of the petition, who proceeded to do so, and reported among other things that the slaves Pena and Manda were by them allotted to the petitioner Jane. This report was confirmed by the said County Court. The plaintiffs in their bill further allege that after this proceeding was had, he discovered there was a total misapprehension as to the provision in the will of Joshua Gorden, and that there was no such separate estate given to the legatee Jane, but that her right to the slaves bequeathed was absolute, and, as such, vested in her husband, Milton Moore, jure mariti. They state that, upon the discovery of this error in the proceeding in the County Court, the said Jane, to thwart and hinder the plaintiff in the recovery of his rights by a suit in court to which he was about to resort, conveyed the said slaves to defendants' intestate, Needham Armfield, who had full notice of the plaintiff's equity arising from the mistake of the parties. They aver that there was no consideration paid by the said Armfield to the said Jane for these slaves, but that the sole object of the parties was to prevent the plaintiff, as the administrator of Milton Moore, from recovering his just rights in the premises. They further state in their bill, that the plaintiff James Moore, and his father David Moore, acting under his authority, supposing that they could thus come to the rights of the plaintiff as administrator *Page 489 
of Milton Moore, got the slaves in their possession and held them adversely to the claim of the said Needham Armfield; for this the purchaser Armfield instituted an action of replevin against them in the Superior Court of Union County, and as the plaintiff was considered to be estopped by the mistaken allegation of title in Jane, made in the petition in the County Court, a judgment was rendered against them in the Supreme Court and the defendants who are the administrators of Armfield threaten to take out execution upon the same. The prayer is for an injunction and for general relief.
The defendants in their answer state that their intestate bought the slaves in question from Jane Moore, and made her ample compensation for the same; that he took from the said Jane a bill of sale for these slaves, with a warranty of title in which there was an acknowledgment of the receipt of $500. The defendant John P. Houston says, after the confirmation of the report in the County Court, Armfield consulted with him as to the propriety of purchasing the said slaves, Pena and her child Manda, and as to the title of the said slaves, and observed that he thought if the County Court was good for any thing, the title was good, and that he, Houston, said he thought so too.
They further state in their answer that their intestate, Armfield, took immediate possession of these slaves and sent them to the Brewer gold-mine, in South Carolina, whence they were surreptitiously taken by the plaintiff James Moore, and the intestate, David Moore, and brought to the County of Union, upon which taking, the defendants' intestate took out a writ of replevin which was prosecuted to judgment in the Supreme Court, and it is submitted that the decision of that Court established in the defendants' testator a good and indefeasible title.
The cause came on for hearing upon the bill and answer, upon a motion to dissolve the injunction theretofore issued, and, upon consideration of the case, his Honor refused to dissolve the injunction, but ordered it to be continued to the hearing. From this order the defendants appealed. *Page 490 
There is no error in the decretal order appealed from. The defendants aver that their intestate made ample compensation to Jane Moore for the slaves in controversy, but they do not aver that he purchased withoutnotice of the equity of the plaintiff's intestate growing out of the petition for partition. On the contrary, the defendant Houston says "that after the confirmation of the said report, his intestate consulted with him as to the propriety of purchasing the slaves, and as to the title, and observed that he thought if the County Court was good for any thing, the title was good, and this defendant, John P. Houston, said he thought so too." So, here is an express admission that doubts had been suggested as to the title of Jane Moore, and the intestate of the defendants, after a consultation with his friend in regard to the title, concluded to take the responsibility of making the purchase. This amounts to notice, and he took subject to any equity, or infirmity in the title, and must stand in the shoes of Jane Moore, under whom he claims.
PER CURIAM, Decretal order affirmed.